IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF MISSOURI

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| VIRGINIA P. DALE, | ) | Case No. 04-40152-JWV |
| | ) | |
| Debtor. | ) | |
| | ) | |
| VIRGINIA P. DALE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adversary No. 04-4046-JWV |
| | ) | |
| HOMEQ SERVICING CORP., | ) | |
| | ) | |
| Defendant. | ) | |

## **MEMORANDUM OPINION**

This matter comes before the Court on a motion to dismiss the adversary complaint of Virginia P. Dale ("Debtor") filed by HomEq Servicing Corporation ("HomEq"), which previously did business as TMS Mortgage ("TMS"). The Debtor's adversary complaint alleges that TMS committed illegal and fraudulent acts in soliciting, confecting, and servicing the Debtor's home mortgage, and based on that alleged activity, the Debtor seeks to, *inter alia*, rescind her home mortgage. In its motion to dismiss, HomEq argues that the Debtor has failed to state a claim on which relief may be granted and that the Debtor's claims are barred by *res judicata.*

For the reasons stated herein, the Court will grant HomEq's motion to dismiss, in part, and will dismiss all of the factual allegations contained in the Debtor's amended complaint that formed, or could have formed, a basis for the Debtor's suit against TMS on November 6, 2000. The Court will allow the Debtor's suit to continue based on factual allegations occurring after that date.

## **I. STANDARD OF REVIEW**

In reviewing a Fed. R. Bankr. P. 7012(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted, a court must accept as true all of the factual allegations in the complaint as well

as the reasonable inferences that can be drawn from them, and a court may dismiss the complaint "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S. Ct. 2229, 81 L. Ed. 2d 59 (1984). Dismissal is appropriate "as a practical matter ... only in the unusual case in which a plaintiff includes allegations that show on the face of the complaint that there is some insuperable bar to relief." *Bramlet v. Wilson*, 495 F.2d 714, 716 (8th Cir. 1974).

## II. BACKGROUND

According to the Debtor's complaint, the Debtor owned a home in Kansas City, Missouri, free of any liens prior to September 1997. In that month, however, TMS convinced the Debtor to take out a mortgage on her home, and the Debtor borrowed $30,600.00, payable over fifteen years at 13.72%. The Debtor asserts that she only wanted a mortgage in the amount of $20,000.00, but the loan was closed at the Debtor's home at 9:00 p.m., and the Debtor felt "hurried" to sign the documentation. The Debtor received copies of the loan documents several days later, and the documents bore a notary's stamp despite the fact that no notary was present when the Debtor signed the loan documents. Furthermore, the Debtor noted that her income was artificially inflated – an act the Debtor believed was undertaken by TMS to qualify her for the loan.

About six months later, TMS approached the Debtor about refinancing the loan with a better interest rate and lower monthly payments. The Debtor agreed to refinance, and signed a new agreement for a $33,150.00 loan payable over thirty years at 9%. After the Debtor fell behind on her payments in March 2000, she approached the Salvation Army and the Metropolitan Lutheran Ministry for financial assistance. When those entities contacted TMS, it refused to provide any documentation on the Debtor's mortgage or the amount of her arrearages.

On November 6, 2000, as part of a previous bankruptcy, the Debtor filed an adversary complaint against TMS, case number 00-4158, alleging that she had a right to rescind her mortgage based on the above-stated facts. That case proceeded to trial on May 8, 2001, and the Debtor, *pro se*, was allowed to present her case-in-chief. The Debtor did not move for the admission of any documentary evidence,

but the Debtor did call and examine one witness. At the close of the Debtor's case, TMS orally moved for a judgment as a matter of law, and that request was granted by the court. A written order was later entered dismissing the Debtor's complaint.

More recently, the Debtor alleged that she has made several attempts to honor her loan agreement with HomEq. On or about June 3, 2003, the Debtor sent HomEq two checks, one for the monthly amount of her mortgage payment, and the other to allow HomEq to set up an automatic payment withdrawal so that HomEq would receive future payments directly from the Debtor's bank account. Both checks were returned to the Debtor.

Other allegations that seemingly may have occurred after November 6, 2000, include HomEq's purported actions of improperly assessing late fees, allocating payments, posting payments, undertaking collection activity, "force" placing insurance on the Debtor's home, including fees not provided for in the loan agreement, and improper foreclosure activities. The Debtor also alleges that HomEq failed to notify her of her right to dispute the amount of her indebtedness and to provide verification of that indebtedness.

Finally, the Debtor claims that HomEq failed to notify consumer reporting agencies of corrections or additions to her credit history.

### III. DISCUSSION

The Debtor argues that HomEq's alleged predatory lending practices, switching of her loan terms at the last minute, false notarization of documents, misrepresentation of income, recalcitrance in providing requested documentation, and failure to accept her mortgage payments gives the Debtor a right of recision, damages, and entitlement to other types of relief. In opposition, HomEq argues that the Court should dismiss the Debtor's adversary complaint on the basis of *res judicata*, in addition to its contention that the Debtor failed to state any claim on which relief could be granted and that any purported claim is barred by the statute of limitations.

The Debtor argues that this Court should not apply the doctrine of *res judicata* on the basis that application of that doctrine would disallow her "full faith and credit and due process of law." The Debtor acknowledges that she has already sued TMS once based on the same facts that she now asserts against TMS's successor, HomEq, but the Debtor contends that her earlier case was dismissed on a technicality

-3-

– her failure to comply with the Federal Rules of Civil Procedure in presenting additional witnesses to the court. The Debtor asserts that she is acting *pro se* and that all she wants is to have this Court address her grievances against HomEq on the merits.

"Under the doctrine of *res judicata*, a judgment on the merits in a prior suit bars a second suit involving the same parties or their privies based on the same cause of action." *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 327 n.5, 99 S. Ct. 645, 58 L. Ed. 2d 552 (1979). *Res judicata* "treats a judgment, once rendered, as the full measure of relief to be accorded between the same parties on the same 'claim' or 'cause of action.'" *Kaspar Wire Works, Inc. v. Leco Engineering & Machine, Inc.*, 575 F.2d 530, 535 (5th Cir. 1978). When a judgment in a prior case is entered, that judgment is binding "'not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose.'" *Sea-Land Servs., Inc. v. Gaudet*, 414 U.S. 573, 579, 94 S. Ct. 806, 39 L. Ed. 2d 9 (1974) (citations omitted). A latter suit is based on the "same cause of action" if it "arises out of the same nucleus of operative facts as the prior claim." *Lane v. Peterson*, 899 F.2d 737, 742 (8th Cir.), *cert. denied*, 498 U.S. 823, 111 S. Ct. 74, 112 L. Ed. 2d 48 (1990). The fact that a plaintiff may present different legal theories for recovery based on the same nucleus of operative facts "is relatively insignificant because 'a litigant cannot attempt to relitigate the same claim under a different legal theory of recovery.'" *United States v. Gurley*, 43 F.3d 1188, 1195 (8th Cir. 1994) (citations omitted).

In this case, the Debtor's earlier adversary complaint alleged largely the same nucleus of operative facts that the Debtor is asserting in the instant adversary complaint. For example, in her earlier case the Debtor alleged that TMS obtained an inaccurate home appraisal, inappropriately calculated the Debtor's income so that she would qualify for a mortgage, charged her an interest rate of 13% when she was promised 9%, failed to provide the Debtor with lending disclosure notices, "hurried" the Debtor into signing the loan documents late at night, failed to provide the Debtor with signed copies of the mortgage documents, failed to properly calculate the Debtor's payments inasmuch as either the loan amount or interest rate was wrong, verbally harassed her in an effort to collect on her outstanding indebtedness, charged excessive attorney's fees and costs for foreclosure and failed to provide the Debtor with a breakdown of those costs, and failed to work with third parties who wanted to financially assist the Debtor in

making her mortgage payments. Furthermore, she asserted that TMS preyed on families in financial distress.

Pursuant to those allegations, the Debtor requested that the court rescind her mortgage with TMS. Trial on the adversary complaint was held on May 8, 2001. At that time, the Debtor presented her case-in-chief, which consisted of one witness, P.J. Phelps, a case manager for United Services Community Action Agency. When asked by the judge if she had any other witnesses or evidence to present, the Debtor stated that she did not. Based on the evidence presented, the Court dismissed the Debtor's case on TMS's request for a judgment as a matter of law. The Debtor never appealed that order of dismissal.

In the adversary complaint now before the Court, the Debtor is again seeking various types of relief based on the same nucleus of operative facts that she had alleged in her earlier adversary complaint. Even construing the Debtor's arguments liberally, the Debtor has not alleged any exception to the application of *res judicata* to her present case. The full faith and credit doctrine is not helpful to the Debtor, and the Debtor's due process argument, be it procedural or substantive, is baseless. Contrary to the Debtor's assertion that her earlier case was dismissed on a technicality, the judgment was entered at the close of her case-in-chief, and under Fed. R. Civ. P. 50, that judgment was rendered on the merits of her case. As much as the Court sympathizes with the plight of *pro se* litigants in navigating the pitfalls of litigation and trial, *pro se* litigants are nevertheless bound by the rules of procedure. *Faretta v. California*, 422 U.S. 806, 834, n. 46, 95 S. Ct. 2525, 45 L. Ed. 2d 562 (1975) (stating that the right of self-representation does not excuse a litigant from complying with the relevant rules of procedure); *Nielsen v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994) (explaining that *pro se* parties must "follow the same rules of procedure that govern other litigants"). Accordingly, inasmuch as the Debtor has already been afforded a full hearing and has had the opportunity to produce evidence and witnesses, the Court finds that the Debtor's earlier dismissal is *res judicata* to the instant adversary complaint inasmuch as the instant complaint alleges facts that formed the basis of her earlier adversary complaint.[1]

The Debtor did, however, seemingly make allegations against HomEq regarding the servicing of

---

[1] Because the Court finds it appropriate to grant HomEq's motion to dismiss based on the doctrine of *res judicata*, the Court need not address HomEq's argument that the Debtor has failed to state a claim upon which relief could be granted or that the Debtor's claims are barred by the statute of limitations.

her mortgage – facts that likely arose after the Debtor filed her November 6, 2000 adversary complaint. For example, the Debtor alleges that HomEq has improperly refused to accept payments on her mortgage, assessed late fees, assessed fees not provided for in her loan agreement, and that HomEq failed to post her payments in a timely manner. In addition, the Debtor asserts that HomEq engaged in improper collection activity, improperly "force" placed insurance on the Debtor's home, began wrongful foreclosure activities, failed to notify her of her right to dispute the amount of her indebtedness and to provide verification of that indebtedness, and that HomEq failed to notify consumer reporting agencies of corrections or additions to her credit history.

Unfortunately, the Debtor's numerous filings in this case prevent a cogent review of the alleged wrongdoings of HomEq after November 6, 2000. In addition to the Debtor's original complaint (Document 1), the Debtor has filed an "Answer to Motion for More Definite Statement and Motion to Strike Immaterial Matter from Complaint" (Document No. 17), a "Modification of Complaint" (Document No. 21), a "Response to Defendant's Request to Deny Plantiff's Request for a Jury Trial and Waiver of Fees" (Document No. 39), an "Answer to Motion to Dismiss with Prejudice" (Document No. 40), an "Additional Response to Defendant's Request to Dismiss" (Document No. 41), an "Amendment to Complaint Filed Previously" (Document No. 45), and a "Response to Show Cause Order Why the Court Should Not Consider the Earlier Adversary Proceeding Filed Against TMS" (Document No. 46). Each document contains some allegations against HomEq and the allegations are not entirely consistent between filings. Although the Court will dismiss any allegations occurring before November 6, 2000, and the causes of action based on that alleged activity, the Court finds it appropriate to allow the Debtor another opportunity to file an amended complaint to detail the allegedly wrongful actions of TMS or HomEq after November 6, 2000, and to state her causes of action, if any, based on those facts.

## IV. CONCLUSION

Because the Debtor has already litigated the majority of her allegations against HomEq in an earlier adversary proceeding against TMS, the doctrine of *res judicata* bars the Debtor from refiling that same suit against TMS's successor, HomEq. Allegedly wrongful conduct by HomEq occurring after that date,

however, is not barred by *res judicata*,[2] and the Court will allow the Debtor to amend her adversary complaint so that the Court, and HomEq, can understand exactly what activities of HomEq – occurring after November 6, 2000 – were allegedly improper and on what legal basis the Debtor is seeking relief.

This memorandum opinion constitutes the Court's findings of fact and conclusions of law. A separate order will be entered pursuant to Fed. R. Bankr. P. 9021.

**ENTERED** this 22nd day of September 2004.

/s/ Jerry W. Venters
HONORABLE JERRY W. VENTERS
UNITED STATES BANKRUPTCY JUDGE

A copy of the foregoing was mailed
conventionally or electronically to:
Virginia P. Dale
Jill D. Olsen

---

[2] In its Motion to Dismiss, HomEq did not specifically address allegations that took place after November 6, 2000.